*No. 22-15518*

———————————————

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————————————

MARK BRNOVICH, *et al.*,

*Plaintiffs-Appellees,*

vs.

JOSEPH R. BIDEN, *et al.*,

*Defendants-Appellants.*

———————————————

On Appeal from the United States District Court for the District of Arizona
Hon. Michael T. Liburdi
Case No. 2:21-cv-01568-MTL

———————————————

### EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
### RELIEF NEEDED BY MARCH 7, 2023

MOTION TO INTERVENE BY THE FIFTY-SIXTH ARIZONA LEGISLATURE,
SPEAKER OF THE ARIZONA HOUSE OF REPRESENTATIVES BENJAMIN
TOMA, ARIZONA SENATE PRESIDENT WARREN PETERSEN, AND
ARIZONA CHAMBER OF COMMERCE & INDUSTRY

———————————————

Kory Langhofer – AZ Bar # 024722
Thomas Basile – AZ Bar # 031150
STATECRAFT PLLC
649 North Fourth Avenue, First Floor
Phoenix, Arizona 85003
Telephone: 602.382.4078
*Attorneys for Proposed Legislative
Intervenors*

Michael Bailey – AZ Bar # 013747
(admission application forthcoming)
ARIZONA CHAMBER OF COMMERCE &
INDUSTRY
100 N. 7th Avenue, Suite 120
Phoenix, Arizona 85007
Telephone: 602.248.4430
*Attorney for Arizona Chamber of
Commerce & Industry*

# <u>CIRCUIT RULE 27-3 CERTIFICATE</u>

Proposed Intervenors Fifty-Sixth Arizona Legislature, Speaker of the Arizona House of Representatives Benjamin Toma, President of the Arizona Senate Warren Petersen, and Arizona Chamber of Commerce & Industry, by and through undersigned counsel, certify the following information pursuant to Circuit Rule 27-3(c):

## I. Contact Information for All Parties

Alexander Samuels
Arizona Attorney General's Office
2005 N. Central Avenue
Phoenix, AZ 85004
(602) 542-5252
Alexander.Samuels@azag.gov
*Counsel for Plaintiffs/Appellees Arizona Attorney General and State of Arizona*

Dennis I. Wilenchik
Wilenchik & Bartness, PC
2810 North Third Street, Suite 103
Phoenix, AZ 85004
(602) 606-2810
admin@wb-law.com
*Counsel for Plaintiff/Appellee Al Reble*

Michael Napier
Napier, Abdo, Coury & Baillie, P.C.
2525 E. Arizona Biltmore Cir., Suite 135
Phoenix, AZ 85016
(602) 248-9107
mnapierpc@aol.com
*Counsel for Plaintiffs/Appellees Phoenix Law Enforcement Association and United Phoenix Firefighters Ass'n. Local 493*

Anna O. Mohan
DOJ - U.S. Department of Justice, Room 7533
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 451-7738
anna.mohan@usdoj.gov

David Peters
DOJ - U.S. Department of Justice, Room 7209
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-1673
david.i.peters@usdoj.gov
*Counsel for Defendants/Appellants*

Kory Langhofer
Thomas Basile
Statecraft PLLC
649 North Fourth Avenue, First Floor
Phoenix, Arizona 85003
(602) 382-4078
kory@statecraftlaw.com
tom@statecraftlaw.com
*Counsel for Proposed Intervenors Fifty-Sixth Arizona Legislature, Speaker of the Arizona House of Representatives Benjamin Toma, and Arizona Senate President Warren Petersen*

Michael Bailey
Arizona Chamber of Commerce & Industry
100 N. 7th Avenue, Suite 120
Phoenix, Arizona 85007
(602) 248-4430
mbailey@azchamber.com
*Attorney for Proposed Intervenor Arizona Chamber of Commerce & Industry*

## II.  Existence and Nature of the Claimed Emergency

On February 14, 2023, the Attorney General announced that the State will forfeit significant facets of its defense of this appeal.  *See* Dkt. 52.  Most notably, the Attorney General now affirmatively advocates a substantial narrowing of the injunctive relief that her predecessor had obtained for the State in the district court, and has abandoned or otherwise will no longer pursue arguments with respect to five previously disputed issues of law that have been fully briefed by the parties.  Oral argument is set for March 7, 2023.  The Proposed Intervenors seek to intervene on an emergency basis to ensure that important protectable interests implicated by the forfeited arguments are adequately represented for the duration of proceedings in this Court and in any future proceedings in the United States Supreme Court.

## III.  Timing of the Motion

The facts material to the Motion—*i.e.*, the Attorney General's substantial change of position on multiple questions of law presented to the Court—did not become known to the Proposed Intervenors, and, upon information and belief, had not otherwise been communicated to the Court, until February 14, 2023.  Upon learning of these facts, the Proposed Intervenors acted quickly to retain counsel and prepare a comprehensive motion in support of their requested intervention.

## IV.   Notice to the Parties

The undersigned notified the parties' respective counsel of record of the impending filing of this Motion by email on February 20, 2023 at 12:13 p.m., Arizona time.  Plaintiff/Appellee Al Reble does not object to the Motion.  As of the time of filing, no other party had yet indicated its position on the Motion.

The Motion will be served electronically on all counsel of record via CM/ECF.

## V.   District Court Proceedings

The Proposed Intervenors did not move to intervene in the district court because, at the time those proceedings were pending, their interests were adequately represented by the Plaintiffs/Appellees.  The key facts underlying this Motion did not accrue until the current Attorney General announced her change of position on February 14, 2023, by which time jurisdiction had vested in this Court.  *See generally United States v. Sadler*, 480 F.3d 932, 941 (9th Cir. 2007) ("Once a notice of appeal is filed, the district court loses jurisdiction over a case."); *see also Cameron v. EMW Women's Surgical Ctr.*, 142 S. Ct. 1002 (2022) (recognizing that intervention on appeal is appropriate in some circumstances).

* * *

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 20, 2023

STATECRAFT PLLC

By: */s/ Thomas Basile*

    Kory Langhofer
    kory@statecraftlaw.com
    Thomas Basile
    tom@statecraftlaw.com
    649 North Fourth Avenue
    First Floor
    Phoenix, Arizona  85003

    *Attorneys for Proposed Intervenors*
    *Fifty-Sixth Arizona Legislature,*
    *Arizona Speaker of the House of*
    *Representatives Benjamin Toma,*
    *and Arizona Senate President*
    *Warren Petersen*

    Michael Bailey
    mbailey@azchamber.com
    ARIZONA CHAMBER OF
    COMMERCE & INDUSTRY
    100 N. 7th Avenue, Suite 120
    Phoenix, Arizona 85007

    *Attorney for Proposed Intervenor*
    *Arizona Chamber of Commerce &*
    *Industry*

## MOTION TO INTERVENE

Months after briefing had concluded, and just a few short weeks before oral arguments, the Attorney General abruptly repudiated much of the relief her predecessor had obtained for the State in the district court, and expressly abandoned key facets of the State's defense of this appeal. *See* Dkt. 52. Because no named party can or will adequately represent the imperative of resisting unlawful and extra-statutory federal incursion into the affairs of the State and its business community, the Fifty-Sixth Arizona Legislature and its presiding officers (hereafter, the "Legislature") and the Arizona Chamber of Commerce and Industry (the "Chamber") respectfully move to intervene in this proceeding.

Proposed Intervenors do not seek any delay of the proceedings. They do not intend to request supplemental briefing or postponement of the oral argument set for March 7.

### THE PROPOSED INTERVENORS

Benjamin Toma is the Speaker of the Arizona House of Representatives, and Warren Petersen is the President of the Arizona Senate. The presiding officers seek to intervene in their official capacities, and on behalf of their respective legislative chambers, which together comprise the Fifty-Sixth Legislature of Arizona. [1]

---

[1] Like its federal counterpart, the Arizona Constitution empowers each house to "determine its own rules of procedure." ARIZ. CONST. art. IV, pt. 2, § 8. Each house has, pursuant to this rulemaking power, delegated to its presiding officer the

The Chamber is a nonprofit membership corporation organized and operated pursuant to section 501(c)(6) of the Internal Revenue Code of 1986. Its mission is to advance Arizona's competitive position in the global economy by advocating free-market policies that stimulate economic growth and prosperity for all Arizonans. The Chamber's members include current and prospective federal contractors who (1) are subject to Executive Order 14,042, which, by its terms and as implemented by subsidiary administrative edicts, requires employees of most federal contractors to be fully vaccinated against COVID-19, unless they are legally entitled to an exemption (hereafter, the "Contractor Mandate"), and (2) may not otherwise require their employees to receive COVID-19 vaccines.[2]

## ARGUMENT

This Court has held that "[i]ntervention on appeal is governed by Rule 24 of the Federal Rules of Civil Procedure." *Bates v. Jones*, 127 F.3d 870, 873 (9th Cir. 1997). The Supreme Court, however, has expressed less certitude. Observing that "[n]o statute or rule provides a general standard to apply in deciding whether intervention on appeal should be allowed," *Cameron v. EMW Women's Surgical*

---

authority to raise and defend in any forum "any claim or right arising out of any injury to the [chamber]'s powers or duties under the constitution or laws of this state." *See* Ariz. Senate Rule 2(N); Ariz. House of Reps. Rule 4(K).

[2]    "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene . . . as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

*Ctr.*, 142 S. Ct. 1002, 1010 (2022), the court suggested that "the 'policies underlying intervention' in the district courts," *id.* (citation omitted), should inform appellate tribunals' disposition of such motions. This Motion will address each element of the traditional Rule 24 analysis, but the Supreme Court's functionalist framework furnishes a more direct route to the same conclusion: intervention should be permitted to ensure a full and vigorous vindication of the State's sovereign interests and the rights of Arizona businesses.

I. **The Proposed Intervenors Are Entitled to Intervene as of Right Because This Motion Is Timely, and Intervention Is Necessary to Protect Important Legal and Sovereign Interests That the Attorney General No Longer Adequately Represents**

"[A] nonparty is entitled to intervention as of right when it '(i) timely moves to intervene; (ii) has a significantly protectable interest related to the subject of the action; (iii) may have that interest impaired by the disposition of the action; and (iv) will not be adequately represented by existing parties.'" *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022) (citations omitted); *see also Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006). "In evaluating whether Rule 24(a)(2)'s requirements are met, we normally follow 'practical and equitable considerations' and construe the Rule 'broadly in favor of proposed intervenors.' We do so because '[a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts.'" *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011). The Proposed Intervenors meet all four prerequisites.

3

## A. The Motion Is a Timely Response to the Attorney General's Sudden Change of Position

"Timeliness hinges on 'three primary factors: '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to the other parties; and (3) the reason for and length of the delay." *Kalbers v. United States Dep't of Justice*, 22 F.4th 816, 822 (9th Cir. 2021) (citations omitted). The appraisal of timeliness is contextual and flexible; it is animated by the Court's predisposition to "favor intervention," and does not regard "hasty intervention" as a superordinate consideration. *Id.*

### 1. Stage of the Proceedings

The temporal lodestar is the point in time at which the intervenor "knows or has reason to know that his interests might be adversely affected by the outcome of litigation." *United States v. Alisal Water Corp.*, 370 F.3d 915, 923 (9th Cir. 2004) (citation omitted). "Where a change of circumstances occurs, and that change is the 'major reason' for the motion to intervene, the stage of proceedings factor should be analyzed by reference to the change in circumstances, and not the commencement of the litigation." *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016). Thus, an intervention request made in the late stages of litigation— indeed, even *after* the issuance of an appellate court's opinion—nonetheless can be timely, if the intervenor's interest or the absence of its effective representation crystallized only belatedly. *See Cameron*, 142 S. Ct. at 1012 (appellate court erred

in denying state attorney general's post-decision motion to intervene, explaining that "[t]he attorney general's need to seek intervention did not arise until the secretary ceased defending the state law, and the timeliness of his motion should be assessed in relation to that point in time"); *Kalbers*, 22 F.4th at 824 (examining when the intervenor learned of the lawsuit's existence—as opposed to potential prejudice to its interests—was "the wrong inquiry"). Given the Attorney General's recent and unexpected change of position, the Proposed Intervenors have not acted at an unduly advanced stage of the proceedings.

### 2. *Prejudice to the Other Parties*

Intervention will not occasion delay, proliferate additional factual or legal issues, or otherwise prejudice the existing parties. The Proposed Intervenors wish only to revivify fully briefed arguments that the Attorney General has abruptly abandoned and—if necessary—to pursue those positions in a petition for rehearing in this Court or a petition for a writ of certiorari in the United States Supreme Court. *See Kalbers*, 22 F.4th at 826 (intervenor's willingness "to comply with the existing . . . briefing schedule" militated against finding of prejudice).

The attenuated possibility that the proposed intervention could require the parties to litigate subsequent appellate proceedings that they otherwise desire to eschew is not a cognizable "prejudice." *See id.* at 825 (acknowledging that "every motion to intervene will complicate or delay a case to some degree" but adding that

"[t]hat is not a sufficient reason to deny intervention"); *W. Watersheds Project*, 22 F.4th at 839; *Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007) (reasoning that granting motion to intervene "will not create delay by 'inject[ing] new issues into the litigation,' but instead will ensure that our determination of an already existing issue is not insulated from review simply due to the posture of the parties").

### 3. Reason for and Length of Delay

Any putative delay preceding this Motion is attributable entirely to the actions and decisions of the Attorney General. The Proposed Intervenors—and, for that matter, the Court and (presumably) the other named parties—learned for the first time on February 14, 2023 that the Attorney General would affirmatively ***oppose*** the scope of the remedy her office had successfully secured in the district court and would yield on multiple significant—and potentially dispositive—contested issues of law. *See* Dkt. 52. Indeed, the last substantive submission by the Attorney General prior to her February 14 letter was a citation of supplemental authorities submitted by her predecessor on December 30, 2022, which buttressed positions championed in the office's answering brief. *See* Dkt. 44.

The Proposed Intervenors acted immediately to safeguard their interests as soon as the Attorney General announced that she would no longer unqualifiedly do so. The six-day interval separating the Attorney General's sudden tergiversation from the filing of this Motion is modest and immaterial. *See Cameron*, 142 S. Ct at

6

1012 (intervention motion was timely when filed two days after named defendant's change of position); *W. Watersheds Project*, 22 F.4th at 840 (three month delay between intervenor's discovery that its interests were in jeopardy and filing of motion was reasonable); *Kalbers*, 22 F.4th at 825 (intervention motion filed "just a few weeks" after intervenor was put on-notice of potential prejudice to its interests was timely); *Smith*, 830 F.3d at 853, 856 (motions to intervene filed 71 days and 79 days after learning of inadequate representation were timely).

For all the foregoing reasons, this Motion is a timely and proportionate response to an unforeseen exigency precipitated by the Attorney General.

## B. The Proposed Intervenors Have Protectable Interests in Defending the Relief Supplied by the District Court

The second criterion for intervention as of right requires only that the prospective intervenor delineate some "significant protectable interest in the action." *Citizens for Balanced Use*, 647 F.3d at 897. This obligation is discharged if the applicant "(1) . . . asserts an interest that is protected under some law and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). The rubric is accommodating, and "[n]o specific legal or equitable interest need be established" at all. "Instead, the 'interest' test directs courts to make a 'practical, threshold inquiry' and 'is primarily a practical guide to disposing of lawsuits by involving as

7

many apparently concerned persons as is compatible with efficiency and due process.'" *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002).

In this vein, while the Proposed Intervenors respectively have standing to pursue independently the named plaintiffs' claims, Article III standing is not a condition precedent to intervention in this appeal. The Supreme Court has clarified that a prospective intervenor need establish standing only if and to the extent it seeks to "invok[e] a court's jurisdiction" to procure affirmative relief. *See Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019). Because the Proposed Intervenors in this procedural posture seek merely to participate as appellees, it is not "incumbent on [them] to demonstrate . . . standing." *Id.*; *see also Envtl. Integrity Project v. Wheeler*, 20-CV-1734 (KBJ), 2021 WL 6844257, at *2 (D.D.C. Jan. 27, 2021) (Brown Jackson, J.) (recognizing "the Supreme Court's recent pronouncement that a party who is not 'invoking a court's jurisdiction' or seeking additional relief is not required to make an independent showing of Article III standing").

### 1. The Legislature Has a Protectable Sovereign Interest in Opposing Unlawful Federal Intrusion into Its Regulatory Affairs

The interests that undergird the Legislature's intervention align with (and in some ways transcend) the proprietary rights and sovereign prerogatives that sustain the State's standing to initiate these proceedings. As the district court recognized, "[t]he Contractor Mandate regulates the State [as a federal contractor], and the State has standing to challenge that regulation." *Brnovich v. Biden*, 562 F. Supp. 3d 123,

146 (D. Ariz. 2022). More fundamentally, the Contractor Mandate also derogates the State's "legally protected sovereign interest in the exercise of sovereign power over individuals and entities within its jurisdiction, which involves the power to create and enforce a legal code." *Id.* (cleaned up); *see also Kentucky v. Biden*, 23 F.4th 585, 600 (6th Cir. 2022) (finding Article III injury where state "plausibly alleged that the federal government has intruded upon an area traditionally left to the states—the regulation of the public health of state citizens in general and the decision whether to mandate vaccination in particular"). Importantly, this interest is no mere inchoate abstraction. The Legislature has acted decisively to protect Arizonans against government overreach imported under the auspices of public health, enacting affirmative protections against governmental vaccine mandates, *see* Ariz. Rev. Stat. § 36-685, and cabining the declaration and management of public health emergencies, *see* 2022 Ariz. Laws ch. 220.

This interest is intrinsically and indivisibly intertwined with the legislative power denoted by the constitution and laws of Arizona. The cornerstone of American federalism is the division of sovereignty, which preserves the State's "legitimate interest in the continued enforceability of its own statutes." *Cameron*, 142 S. Ct. at 1011 (citation omitted). A corollary is that a State's residual sovereign interests are not always lodged in a single actor. To the contrary, "[r]espect for state

sovereignty must also take into account the authority of a state . . . [to] empower[] multiple officials to defend its sovereign interests in federal court." *Id.*

While *Cameron* was concerned with the dispersion of this power within a state's executive branch, the Supreme Court also has affirmed the legislative branch's own independent and differentiated interest in the judicial vindication of its enactments. *See Berger v. N.C. State Conference of the NAACP*, 142 S. Ct. 2191 (2022). Recognizing that "a full consideration of the State's practical interests may require the involvement of different voices with different perspectives," *id.* at 2203, the court held that legislative leaders can maintain a cognizable "interest" in the full and effective enforcement of state laws, which is sufficient to sustain intervention in federal proceedings, *see id.* at 2201.

So it is here. The Legislature is the locus of sovereignty in Arizona government. *Whitney v. Bolin*, 330 P.2d 1003, 1004 (Ariz. 1958) ("[T]he power of the legislature is plenary and unless that power is limited by express or inferential provisions of the Constitution, the legislature may enact any law which in its discretion it may desire."). While the Attorney General typically assumes the defense of the State's interest in judicial proceedings, *see* Ariz. Rev. Stat. § 41-193(A)(3), this partial and revocable legislative declaration of responsibility by no means "suggest[s] that the State's executive branch holds a constitutional monopoly on representing [Arizona]'s practical interests in court." *Berger*, 142 S. Ct. at 2202–

10

03.  To the contrary, Ariz. Rev. Stat. § 12-1841—which bears strong parallels to the North Carolina statute that undergirded intervention in *Berger*, *see id.* at 2197 (citing N.C. Gen. Stat. Ann. § 1-72.2 (2021))—reserves for the Speaker of the Arizona House of Representatives and the President of the Arizona Senate an "entitle[ment] to be heard," in any proceeding implicating the constitutionality of a state law, to include "interven[ing] as a party" or "fil[ing] briefs in the matter."  Ariz. Rev. Stat. § 12-1841(A), (D).  "The objective of this requirement is to protect the state and its citizens should the parties be indifferent to the outcome of the litigation." *Ethington v. Wright*, 189 P.2d 209, 213 (Ariz. 1948).  The Legislature's explicit extension of intervention rights to the Speaker and Senate President, *see* 2010 Ariz. Laws. ch. 105, recognized both the diffusion of the State's interests across both the legislative and executive departments, and the possibility that the Attorney General may be unwilling or unable to effectuate them fully.

In addition, the Arizona Constitution incorporates explicit protections of state sovereignty against unconstitutional federal abrogation.  *See* ARIZ. CONST. art. II, § 3.  This provision, approved by the Arizona electorate in 2014, affirms that the state may "pursu[e] any . . . available legal remedy" to counter perceived unconstitutional federal overreach, and contemplates that "the people or their representatives [may] exercise" authority to that end.  *Id.*  This intended bulwark against unlawful federal

encroachment is, by its terms, not the exclusive province of the Attorney General, but rather is vested collectively in the elected branches of Arizona state government.

Finally, both federal and state tribunals have recognized the Arizona Legislature's inherent autonomy to pursue and defend claims in furtherance of its institutional interests and prerogatives. *See, e.g.*, *Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787, 802 (2015); *Forty-Seventh Legislature v. Napolitano*, 143 P.3d 1023, 1028 (Ariz. 2006).

In short, Arizona has "empowered the leaders of its two legislative houses to participate in litigation on the State's behalf under certain circumstances." *Berger*, 142 S. Ct. at 2197. In so doing, it has imputed to them the capacity to assert and defend in this proceeding the State's protectable sovereign interest in ordering the rights and liberties of persons within its borders, including individuals and businesses that contract with the federal government.

### 2. The Chamber Has a Protectable Interest in Opposing Unlawful Federal Regulatory Mandates on its Members

Common sense fortifies the blackletter proposition that when the legality of a regulatory regime is challenged, "the interests of those who are governed by those schemes are sufficient to support intervention." Wright & Miller, 7C FED. PRAC. & PROC. CIV. § 1908.1 (3d ed.). As the direct targets of the Contractor Mandate, Chamber members who contract with the federal government possess a palpable protectable interest in resisting federal mandates that significantly alter their existing

12

or prospective legal obligations. *See Berg*, 268 F.3d at 820, 821–22 (trade association had interest in litigation challenging regulatory parameters governing construction projects in which some of its members were participating, and affirming that "[c]ontract rights are traditionally protectable interests"); *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) (representatives of healthcare providers had protectable interest in litigation relating to enactment that protected providers' freedom of conscience, even though the enactment did not directly confer any specific legal rights on the proposed intervenors); *cf. Citizens for Balanced Use*, 647 F.3d at 898 (environmental groups had interest in "preserving wilderness character within the" forest area to which the litigation related).

## C. Denial of Intervention Would Severely Impair the Proposed Intervenors' Ability to Protect Their Interests

When, as here, a proposed intervenor has delineated a protectable interest in the proceedings, this Court traditionally has had "little difficulty concluding that the disposition of th[e] case may, as a practical matter, affect it." *Lockyer*, 450 F.3d at 442. The Attorney General's abnegation of key facets of the State's defense undermines substantive protections secured by the district court's injunction. *See Kalbers*, 22 F.4th at 828 (finding application of this element to be "clear-cut" when proposed intervenor's interest "would obviously be impaired" by an adverse court ruling). Although the same adversity redounds to both the Legislature and the Chamber, the nature of the impairment is slightly different for each.

13

For the Chamber, the Attorney General's collusive advocacy of a narrowed injunction that excludes private contractors from its protective scope catalyzes an acute risk to its members' interests. *See City of Los Angeles*, 288 F.3d at 399 ("when an existing party expressly and unequivocally disclaims the right to seek certain remedies, the court may consider the case as restructured" when evaluating a proposed intervenor's interests). This potential abridgement of the district court's injunction would expose the Chamber's federal contractor members and their employees to the immediate prospect of coerced vaccination. *See Brnovich*, 562 F. Supp. 3d at 144 (observing that Defendants are requiring at least some federal contractors "to modify their contracts *now*" and threatening the possibility of losing "consequential federal contracts in the future"). This looming regulatory scythe—which even a partial curtailment of the district court's injunction would unharness—would impair these Chamber members' protected interests. *See Lockyer*, 450 F.3d at 442 (intervenor healthcare providers' interests were sufficiently implicated in litigation that would "determine conclusively whether, and the degree to which, the [challenged federal enactment] handcuffs states that would force health care providers to perform abortions"); *see also Citizens for Balanced Use*, 647 F.3d at 900 ("We stress that intervention of right does not require an absolute certainty that a party's interests will be impaired," but rather only that impairment is possible).

14

For the Legislature, a substantial narrowing of the district court's injunction—which the Attorney General now urges—would enervate the Legislature's ability to protect Arizona individuals and businesses from the unlawful Contractor Mandate. Similarly, should this Court find error in certain aspects of the district court's analysis, the Attorney General has explicitly forfeited fully briefed alternative arguments and theories (*e.g.*, the major questions doctrine, certain canons of construction, and Administrative Procedure Act claims) that otherwise could sustain the district court's rulings. *See* Dkt. 52.

Any rejoinder that the State's offensive (rather than defensive) posture in this litigation neutralizes the Legislature's interest in safeguarding state sovereignty dissipates under scrutiny. Rule 24 is fundamentally "practical and equitable" in its orientation. *Wilderness Soc.*, 630 F.3d at 1179 (citation omitted); *see also* Wright & Miller, 7C FED. PRAC. & PROC. CIV. § 1908.2 (3d ed.) ("It generally is agreed that in determining whether disposition of the action will impede or impair the movant's ability to protect its interest the question must be put in practical terms rather than in legal terms."). A judgment in favor of the Defendants would necessarily and inevitably "clearly conflict[] with Arizona's laws and governance policies," *Brnovich*, 562 F. Supp. 3d at 146—which protect public employees from involuntary vaccination, *see* Ariz. Rev. Stat. § 16-685—and broadly constrict the State's ability to extend similar rights to private sector federal contractors in Arizona. *See Peruta*

*v. Cty. of San Diego*, 824 F.3d 919, 940 (9th Cir. 2016) (en banc) (state could intervene even though no state statute was in dispute because plaintiffs' challenge to county firearm laws could have "substantially impaired [the state's] ability to regulate firearms").

The irreducible crux of this dispute is whether the State may protect its own employees and those of Arizona businesses that contract with the federal government from compulsory vaccination. To deny intervention would—particularly in light of the Attorney General's tepid and tenuous response to this enduring question—"risk turning a deaf federal ear to voices the State has deemed crucial to understanding the full range of its interests." *Berger*, 142 S. Ct. at 2201.

### D. The Attorney General Will Not Adequately Represent the Proposed Intervenors' Interests

"To evaluate adequacy of representation, courts consider three factors: '(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.'" *W. Watersheds Project*, 22 F.4th at 840–41 (citation omitted). "[A]bsolute certainty," *Citizens for Balanced Use*, 647 F.3d at 900, of a divergence in interests is not necessary. Rather, the applicant need only show "that representation of his interest *may* be inadequate—a 'minimal' burden." *Kalbers*, 22 F.4th at 828.

16

    1.  *The Attorney General Cannot or Will Not Make All the Proposed Intervenors' Arguments*

The Attorney General has gratuitously relinquished much of the injunctive relief awarded by the district court, and passively ceded alternative arguments that could underpin judgment in the State's favor.  *See* Dkt. 52.  Parties opposing this Motion may retort that because the Attorney General still ostensibly espouses the "ultimate objective" of a (partial) affirmance, a presumption of adequate representation arises.  *See Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996).  This argument flounders for three reasons.

First, the Supreme Court has extinguished any such "presumption," at least when, as here, legislative leaders seek intervention in their capacity as independent defenders of a State's sovereign interests.  *See Berger*, 142 S. Ct. at 2204; *see also Callahan v. Brookdale Senior Living Communities, Inc.*, 42 F.4th 1013, 1021 n.5 (9th Cir. 2022) (acknowledging that *Berger* "calls into question whether the application of such a presumption is appropriate," but declining to decide the question).  And the obvious disagreement between the Proposed Intervenors and the Attorney General on substantive disputed questions of law demonstrate that they share no unitary "identity of interest," *id.*; *see also Berger*, 142 S. Ct. at 2204 (adequate representation may exist when an applicant's interest is "identical" to or "overlaps fully" with that of a named party).

17

Second, the Attorney General has acknowledged explicitly that she does ***not*** share the Proposed Intervenors' objective of enjoining the Contractor Mandate's enforcement against private federal contractors in the District of Arizona. *See Citizens for Balanced Use*, 647 F.3d at 899 (proposed intervenor's effort to "secure the broadest possible" relief relative to the "narrower" avenue favored by named party "demonstrates the[ir] fundamentally differing points of view . . . on the litigation as a whole").

Third, even assuming *arguendo* a unity of objectives and a presumption of adequate representation, the undisputed facts easily rebut that presumption. The Attorney General's repudiation of much of the relief secured in the district court, desertion of her predecessor's carefully crafted arguments on significant (and potentially dispositive) legal issues, and forfeiture of a possible remand belie any plausible claim of adequate representation. *See id.* at 901 (finding inadequate representation where court could not be "assured" that named party was "willing to make" all the proposed intervenors' arguments); *Berg*, 268 F.3d at 824 (it was sufficient for proposed intervenors to show "it is likely that [the parties] will not advance the same arguments as Applicants"); *Bates*, 127 F.3d at 873.

### 2. *The Proposed Intervenors Will Supply Necessary Arguments*

The Proposed Intervenors wish to participate precisely so that meritorious arguments that the previous Attorney General fully and comprehensively briefed are

not summarily discarded. *See W. Watersheds*, 22 F.4th at 841 (noting that the court need not necessarily believe that a proposed intervenor's "arguments are likely to prevail. That they are colorable is sufficient at this stage").

In sum, the claims and arguments that the Attorney General disavowed in her February 14 letter are material, if not critical, to the adequate representation of the Proposed Intervenors' protectable interests in resisting an unlawful federal mandate that abrogates Arizona's sovereign prerogatives and undermines the rights of Chamber members and their employees.

## II.    <u>Alternatively, Permissive Intervention Is Warranted</u>

Should the Court determine that one or more of the Proposed Intervenors cannot intervene as of right, it should allow intervention on a permissive basis. "Permissive intervention to litigate a claim on the merits under Rule 24(b) requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). The first two elements can be easily dispatched. When, as here, the Court's subject matter jurisdiction is predicated on the presence of federal questions and the proposed intervenors do not raise state law claims, an independent jurisdictional ground for intervention is unnecessary. *See Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011). Second, the Motion is timely for the reasons

19

discussed above. *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997) (timeliness analysis is the same under Rule 24(a) and 24(b)).

Finally, the claims and arguments that the Proposed Intervenors will advance do not merely overlap with those the named parties originally presented to this Court; they are coterminous. As noted above, the Proposed Intervenors do not seek supplemental briefing or a postponement of oral arguments. The mere addition of a few parties inflicts no cognizable prejudice; to the contrary, "federal courts routinely handle cases involving multiple officials sometimes represented by different attorneys taking different positions." *Berger*, 142 S. Ct. at 2206; *see also W. Watersheds*, 22 F.4th at 839 (concern "that additional parties and arguments might make resolution of the case more difficult" is "a poor reason to deny intervention"). The Proposed Intervenors wish only to ensure that the positions that the Attorney General wholly or partially abdicated in her February 14 letter are preserved and maintained in future proceedings before this Court and the United States Supreme Court.

## CONCLUSION

For the foregoing reasons, the Court should allow the Proposed Intervenors to intervene as of right, pursuant to Fed. R. Civ. P. 24(a)(2), or, in the alternative, on a permissive basis, pursuant to Fed. R. Civ. P. 24(b)(1), and permit them to participate in the oral argument set for March 7, 2023.

Dated: February 20, 2023      STATECRAFT PLLC

By: */s/ Thomas Basile*
    Kory Langhofer
    kory@statecraftlaw.com
    Thomas Basile
    tom@statecraftlaw.com
    649 North Fourth Avenue
    First Floor
    Phoenix, Arizona  85003

    *Attorneys for Proposed Intervenors*
    *Fifty-Sixth Arizona Legislature,*
    *Arizona Speaker of the House of*
    *Representatives Benjamin Toma,*
    *and Arizona Senate President*
    *Warren Petersen*

    Michael Bailey
    (admission application forthcoming)
    mbailey@azchamber.com
    ARIZONA CHAMBER OF
    COMMERCE & INDUSTRY
    100 N. 7th Avenue, Suite 120
    Phoenix, Arizona 85007

    *Attorney for Proposed Intervenor*
    *Arizona Chamber of Commerce &*
    *Industry*

**CERTIFICATE OF COMPLIANCE**

This Motion complies with the type-volume limitation of Rule 27(d)(2) because it contains 4,769 words, excluding the parts that can be excluded. Pursuant to Circuit Rule 27-1(d), the Motion does not exceed 20 pages. This Motion further complies with the typeface requirements of Rules 27(d)(1)(E) and 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using the Microsoft Word in 14-point Times New Roman font.

Dated: February 20, 2023          */s/ Thomas Basile*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on February 20, 2023. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: February 20, 2023          */s/ Thomas Basile*