## No. 22-15518

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

KRISTIN K. MAYES, in her official capacity as Attorney General of Arizona; et al.,

*Plaintiffs-Appellees,*

v.

JOSEPH R. BIDEN in his official capacity as President of the United States, et al.,

*Defendants-Appellants.*

On Appeal from the United States District Court for the District of Arizona
Case No. 2:21-CV-01568-MTL

## STATE'S RESPONSE TO EMERGENCY MOTION TO INTERVENE

Kristin K. Mayes
*Attorney General*

Alexander W. Samuels
*Principal Deputy Solicitor General*
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-5252
*Counsel for Appellees State of Arizona
and Kristin K. Mayes*

## INTRODUCTION

The State of Arizona and Arizona Attorney General Kristin K. Mayes (collectively the "State") hereby respond to the emergency motion to intervene filed by the Arizona Legislature, House Speaker, Senate President (collectively the "Legislative Intervenors"), and the Arizona Chamber of Commerce & Industry (the "Chamber").[1] The State takes no position on the Chamber's motion to intervene. As to the Legislative Intervenors, however, the State opposes intervention.

Intervention on appeal is rare, and intervention within weeks of oral argument even rarer. While this case is in an unusual posture because the State no longer urges all arguments made in its answering brief and below, it is likewise unusual because this Court already has properly before it all the arguments the Legislative Intervenors wish to urge. No "emergency" intervention is thus necessary.

Even if this Court were inclined to grant one party intervention, it does not follow that more than one of the moving parties need intervene. Indeed, because all Proposed Intervenors jointly make the same arguments, the case for a second intervenor is far weaker than that for a first. And for the reasons detailed below, the Legislative Intervenors' case for intervention is already on especially shaky ground.

---

[1] The State refers below to all proposed intervenors collectively as the "Proposed Intervenors."

Finally, the State notes that the primary relief Proposed Intervenors seek is participation in oral argument, something this Court could give them simply by allowing one or more Proposed Intervenors to argue as amicus.

## ARGUMENT

## I. The State did not "forfeit" arguments previously made on appeal.

To begin, Proposed Intervenors' arguments rest on a flawed premise. Those arguments either misunderstand the State's February 14 letter to this Court, misunderstand the law, or both. The State's letter did not "forfeit" arguments previously made in defense of the district court's injunction, thus robbing this Court of any opportunity to consider them. (Dkt. 53 at iii, 15, 18.) Rather, the letter detailed the State's conclusion that the district court's injunction was overbroad and the State's intent to continue to advance only some arguments made by the Attorney General's predecessor. (Dkt. 52.)

The distinction is important. Forfeiture (or waiver) generally refers to a failure to timely raise an argument, in which case an appellate court will typically decline to consider the argument altogether. *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 44 F.4th 838, 845 n.4 (9th Cir. 2022). Even under those circumstances, the court has some discretion to consider arguments not originally made. *United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015). More importantly here, the arguments in question were timely made in the answering brief

by the Attorney General's predecessor. Although the Attorney General does not intend to continue advancing certain arguments, the Court is well within its power to consider them.

This is especially true because the State is the appellee, and this Court may affirm a district court ruling on any ground supported by the record, even if *not* asserted by the appellee. *See, e.g.*, *Angle v. United States*, 709 F.2d 570, 573 (9th Cir. 1983). Moreover, this Court may "identify and apply the correct legal standard, whether argued by the parties or not." *Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir. 2013).

This case thus differs from any cited by Proposed Intervenors for the proposition that "'when an existing party expressly and unequivocally disclaims the right to seek certain remedies, the court may consider the case as restructured.'" (Dkt. 53 at 14 (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 399 (9th Cir. 2002)).) Setting aside that *City of Los Angeles* concluded there was no such restructuring in that case, the Court there reviewed the denial of intervention in the district court before relief had been granted. *Id.* This case is in a fundamentally different posture.

In short, by filing the February 14 letter, the State was announcing a partial disagreement with the Attorney General's predecessor, not taking away this Court's

3

opportunity to consider her predecessor's arguments.[2] Nor were the State's actions "collusive" in any way. (*See* Dkt. 53 at 14.) The new Attorney General undertook an independent, good faith review of this case following a change in administration and promptly filed a letter publicly clarifying the State's position. In doing so, the State promptly notified this Court, the parties, and the public of the arguments it intended to advance moving forward, rather than waiting until oral argument to reveal any such changes. Any suggestion that those deliberate and transparent actions were taken in bad faith is baseless.

## II. The State partially opposes the motion to intervene.

"Intervention on appeal is governed by Rule 24 of the Federal Rules of Civil Procedure." *Bates v. Jones*, 127 F.3d 870, 873 (9th Cir. 1997). "Intervention at the appellate stage is, of course, unusual and should ordinarily be allowed only for 'imperative reasons.'" *Id.* (quoting *Landreth Timber Co. v. Landreth*, 931 F.2d 1348, 1353 (9th Cir. 1997)); *accord Amalgamated Transit Union Int'l, AFL-CIO v. Donovan*, 771 F.2d 1551, 1552 (D.C. Cir. 1985) ("A court of appeals may allow intervention at the appellate stage where none was sought in the district court only in an exceptional case for imperative reasons." (cleaned up).)

---

[2]     The one possible exception is the withdrawal of any intent "to seek a remand for claims under the Administrative Procedure Act." (Dkt. 52 at 2.) The district court declined to reach those claims, however, because they were "not adequately briefed" by the Attorney General's predecessor and thus "Plaintiffs [had] therefore failed to demonstrate that they are entitled to relief on those grounds." (ER 20 n.7.)

Here, Proposed Intervenors seek intervention of right or, alternatively, permissive intervention. (Dkt. 53 at 20.) Rule 24(a)(2) "entitles intervention of right when an applicant: (i) timely moves to intervene; (ii) has a significantly protectable interest related to the subject of the action; (iii) may have that interest impaired by the disposition of the action; and (iv) will not be adequately represented by existing parties." *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020). Under Rule 24(b)(1) in relevant part, permissive intervention *may* be granted if the motion to intervene is "timely" and the movant has a "claim or defense that shares with the main action a common question of law or fact"—and even then, intervention is discretionary. Fed. R. Civ. P. 24(b)(1).

The movant bears the burden of satisfying the elements of intervention. *Western Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022).

### A. The State takes no position on the Chamber's motion to intervene.

The State neither supports nor objects to the Chamber's motion to intervene. Regarding the relevant factors, the State notes that the Chamber articulates a protectable interest in that the outcome of this action could impact whether the Contractor Mandate is enforced against its members. And the State's recent change in position most directly affects the Chamber, as the narrowed version of the injunction the State is now defending would not apply to the Chamber's members if they remain nonparties. (*See* Dkt. 52 at 1-2.)

5

On the other hand, the Chamber could have moved to intervene to protect the interests of its members in the district court. In another case challenging the Contractor Mandate, a "trade organization representing tens of thousands of contractors and subcontractors" did exactly that even where several states sought a broad injunction. *Georgia v. Biden*, 574 F. Supp. 3d 1337, 1347-48 (S.D. Ga. 2021), *aff'd in part & vacated in part*, 46 F.4th 1283, 1307-08 (11th Cir. 2022). And for good reason, as demonstrated by several decisions holding that injunctions against the Contractor Mandate should apply only to the parties. *See Kentucky v. Biden*, 57 F.4th 545, 556-57 (6th Cir. 2023); *Georgia*, 46 F.4th at 1308; *Louisiana v. Biden*, 575 F. Supp. 3d 680, 695 (W.D. La. 2021), *aff'd*, 55 F.4th 1017, 1035 (5th Cir. 2022).

In the end, the Chamber's motion presents interesting questions and the State takes no position on the ultimate resolution.

**B.  The State objects to intervention by the Proposed Legislative Intervenors.**

While the Chamber's motion presents interesting (and perhaps close) questions, the Legislative Intervenors are on different footing. On several fronts, their motion to intervene is less persuasive.

### 1. The Legislative Intervenors lack a significant protectable interest warranting intervention of right.

The contrast between the Chamber and the Legislative Intervenors is especially stark on the "protectable interest" front. When it came time for the Chamber to articulate its protectable interest, it was able to do so clearly in just two sentences. (Dkt. 53 at 12-13.) The Legislative Intervenors, meanwhile, spend four pages throwing several different arguments at the wall to see if something will stick.

"A would-be intervenor has a significant protectable interest if the interest is protected by law and there is a relationship between that interest and the claim or claims at issue." *Cooper v. Newsom*, 13 F.4th 857, 865 (9th Cir. 2021). "A significant protectable interest will be found if a legally protected interest will suffer a practical impairment in the pending litigation." *Id.* Here, the Legislative Intervenors claim to have a "protectable sovereign interest in opposing unlawful federal intrusion into [their] regulatory affairs." (Dkt. 53 at 8 (capitalization altered).) That claim does not withstand scrutiny for two reasons.

***First***, the Legislative Intervenors purport to speak on behalf of "the State's" interests, but it is the Attorney General who represents "the State" in federal court under Arizona law. *See* A.R.S. § 41-193(A)(3) (providing that Attorney General "shall . . . represent this state in any action in a federal court").

Anticipating this problem, the Legislative Intervenors cite A.R.S. § 12-1841, which they say authorizes them to represent state interests here. (Dkt. 53 at 11.) But

by its own terms, that statute covers only "proceeding[s] in which a state statute, ordinance, franchise, or rule is alleged to be unconstitutional" and defense of the law against constitutional challenge is thus required. A.R.S. § 12-1841(A). This case involves affirmative, not defensive litigation, and challenges federal action rather than state statutes. Section 12-1841(A) is thus inapplicable here. *See also Miracle v. Hobbs*, 333 F.R.D. 151, 155 (D. Ariz. 1999) (noting that even where § 12-1841(A) might apply, Arizona Senate President and Arizona House Speaker's interests under § 12-1841(A) are less compelling "where the attorney general is already defending the law").

For similar reasons, the Legislative Intervenors' heavy reliance on *Berger v. N.C. State Conf. of the NAACP* fails. 142 S. Ct. 2191 (2022). The Legislative Intervenors pin much on their assertion that A.R.S. § 12-1841 "bears strong parallels to the North Carolina statute that undergirded intervention in *Berger*." (Dkt. 53 at 11.) But even assuming that's true, the difference is that the underlying dispute in *Berger* was the type of dispute contemplated by the statute authorizing intervention: defense of state statutes against constitutional challenges. *See Berger*, 142 S. Ct. at 2207 (Sotomayor, J., dissenting) ("The underlying dispute in this case concerns the constitutionality of North Carolina's voter-identification law, Senate Bill 824 (S.B. 824), enacted in 2018."). It is thus little surprise—but little help to the Legislative Intervenors in this affirmative litigation brought by the State and the Attorney

8

General—that the *Berger* intervenors succeeded with a similar statute in very different circumstances.

Retreating, the Legislative Intervenors cite a general provision of the Arizona Constitution added in 2014. (Dkt. 53 at 11–12.) The provision authorizes "this state" to "exercise its sovereign authority to restrict the actions of its personnel and the use of its financial resources to purposes that are consistent with the constitution." Ariz. Const. art. II, § 3. The Legislative Intervenors cite no authority suggesting that this general provision authorizes them to intervene in litigation at all, much less here. Nor do they explain the provision's relevance in a case like this one, where the district court found that federal actions were inconsistent with a grant of federal statutory authority, not unconstitutional. (*See* ER 38-48, 55-58 (district court's order rejecting constitutional claim, but holding that executive actions exceeded Procurement Act authority).)

Retreating further, the Legislative Intervenors cite two cases that they say support their case for intervention, but neither does. (Dkt. 53 at 12.) In *Arizona State Legislature v. Arizona Independent Redistricting Commission*, the issue was whether the Legislature had standing to sue, not intervention.[3] 576 U.S. 787, 799-

---

[3] "The Courts of Appeals have expressed differing views as to the relationship between the interest required to confer standing and the interest required to intervene under Rule 24 of the Federal Rules of Civil Procedure." *Diamond v. Charles*, 476 U.S. 54, 73-74 (1986) (O'Connor, J., concurring in part and in the judgment). At a minimum, however, the requirement of a significantly protectable interest under

804 (2015). Moreover, the suit in that case had been explicitly authorized by both legislative chambers and was against a state initiative that "would completely nullify a vote by the Legislature, now or in the future, purporting to adopt a redistricting plan." *Id.* at 802-04 (cleaned up). The dispute focused on the scope of the Legislature's role under the United States Constitution's Elections Clause, which explicitly refers to state legislatures. *See id.*; U.S. Const. art. I, § 4. No such direct interest is implicated here.

Likewise, in *Forty-Seventh Legislature v. Napolitano*, the issue was whether the Legislature had standing. 143 P.3d 1023, 1027-28 (Ariz. 2006). And again, both legislative chambers had specifically authorized the suit. *Id.* at 1025. The case concerned the Governor's veto power, and the core dispute thus centered on the relationship between the powers of the Legislature and those of the Governor. The Court found that the Legislature had "sustained a direct injury to its authority to make and amend laws by a majority vote." *Id.* at 1028.

Neither of these cases was about intervention at all, let alone about an attempt to intervene in offensive litigation concerning whether the federal executive acted consistent with federal law, where the State was already represented by the Attorney

---

Rule 24 "calls for a direct and concrete interest that is accorded some degree of legal protection." *Id.* at 75.

General. And in both cases, there was a clearer and more direct injury to the Legislature's institutional powers.

Because the Legislative Intervenors lack authority to represent the State here—and because any injury they allege is far more indirect than in those cases they cite—they lack the type of protectable interests that justify intervention of right. *See Cooper*, 13 F.4th at 868 (concluding that district attorneys seeking intervention "do not have a 'significant protectable interest'" in the litigation because state law "does not authorize [them] to defend the State" in the type of case at hand).

***Second***, the Legislative Intervenors suggest that their power to regulate public health is at stake. (Dkt. 53 at 8-9, 15-16.) But that is an overstatement. The issue in this lawsuit is not whether the Arizona Legislature has power to enact certain laws, but whether the federal executive had authority to enact a certain mandate. The fact that the federal mandate relates to vaccines and public health does not alone create for the Legislature the sort of significant protectable interest warranting intervention of right.

Perhaps recognizing this, the Legislature points to two of its recently passed laws, which relate to vaccines and emergency declarations. (Dkt. 53 at 8-9 (citing A.R.S. § 36-685; 2022 Ariz. Laws ch. 220).) Notably, both laws were enacted not only after this litigation was initiated, but months after the district court issued its injunction and the case was already on appeal. *See* 2022 Ariz. Laws ch. 180 (Apr.

11

25, 2022); 2022 Ariz. Laws ch. 220 (May 6, 2022). Thus, any conflict that exists was created by the Legislature after the federal mandate was issued, not the other way around.

Moreover, one of the laws relates only to emergency declarations. 2022 Ariz. Laws ch. 220. The other prohibits only some "government entit[ies]" from requiring COVID-19 vaccinations. A.R.S. § 36-685. Thus, even the narrowed injunction the State is now defending after its February 14 letter would resolve any conflict.[4]

This Court should not hold that the Legislature has created a significant protectable interest here by enacting laws conflicting with the Contractor Mandate after issuance of that mandate. And even setting the timing aside, the Legislature seems to encourage this Court to hold that the Legislature has a significant protectable interest any time its laws have even the slightest conflict with federal law. No authority compels or supports that holding.[5]

---

[4] In analyzing a different issue, the district court concluded that the Contractor Mandate was inconsistent with other Arizona laws. (ER 47.) In reaching that conclusion, however, the district court pointed to laws prohibiting only state entities, not private parties, from requiring "any mode of treatment against that person's will." A.R.S. § 36-184; *see also* A.R.S. § 36-114 (using similar language).

[5] The Legislative Intervenors also suggest there are "proprietary rights" at stake. (Dkt. 53 at 8.) They do not explain what these rights are, even though it is their burden to establish intervention. *Western Watersheds Project*, 22 F.4th at 835. If they are referring to the fact that the State is a federal contractor subject to the mandate, it is the Attorney General who is authorized to represent "the State" for that purpose, as explained above.

**2.    Even if the Legislative Intervenors had a significant protectable interest, it is already adequately represented.**

While members of the Chamber seek to represent private interests, the Legislative Intervenors are an Arizona public entity and its presiding officers.  And the State is continuing to defend the district court's injunction as to contracts between Arizona public entities and the federal government.  The Legislative Intervenors nevertheless claim that the Attorney General "cannot or will not make all [their] arguments."  (Dkt. 53 at 17 (capitalization omitted).)  This claim is unpersuasive for three reasons.

First, decisions about which arguments to make are strategic, and the fact that the Legislative Intervenors disagree does not mean their interests are inadequately represented.  *See, e.g.*, *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 796 (7th Cir. 2019) (affirming denial of Legislature's motion to intervene as of right because the Legislature "did not demonstrate that the Attorney General is an inadequate representative of the State's interest absent a showing he is acting in bad faith or with gross negligence").

And in this Circuit, there is a presumption of adequate representation under the circumstances present here.  *See Oakland Bulk & Oversized Terminal, LLC*, 960 F.3d at 620; *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003); *see also Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 973 (3d Cir. 1982) ("Representation is generally considered adequate if no collusion is

shown between the representative and an opposing party, if the representative does not represent an interest adverse to the proposed intervenor and if the representative has been diligent in prosecuting the litigation."). It is true, as Proposed Intervenors point out, that the presumption has been "call[ed] into question" by language in *Berger*. *See Callahan v. Brookdale Senior Living Communities, Inc.*, 42 F.4th 1013, 1021 n.5 (9th Cir. 2022). But only when binding precedent from this Court is "clearly irreconcilable with the reasoning or theory of intervening higher authority" may a three-judge panel of this Court discard its own precedent. *Miller v. Gammie*, 335 F.3d 889, 892-93 (9th Cir. 2003). Here, the only direct statement from the Supreme Court was that "a presumption of adequate representation is inappropriate when a duly authorized state agent seeks to intervene *to defend a state law*." *Berger*, 142 S. Ct. at 2204 (emphasis added). Again, this case is not *Berger*, and *Berger* explicitly chose to leave open whether a presumption of adequate representation could exist outside its limited context. *See id.* This Court's longstanding precedents on this issue are thus far from "clearly irreconcilable" with *Berger*.

Second, even setting aside any presumption, the Legislative Intervenors fail to meet the inadequate representation prong under any standard. As is noted above, the State is continuing to defend the district court's injunction as applied to state entities. Moreover, any arguments the Legislative Intervenors wish to re-urge are

14

already in front of this Court, both through the answering brief and through the reasoning of the district court.

Finally, it is worth noting that the Legislative Intervenors' case for intervention is even worse if the Chamber is permitted to intervene. To be clear, intervention is unnecessary for this Court to consider the arguments all Proposed Intervenors seek to adopt—those made in the answering brief (and the reasoning underlying the district court's order). But to the extent the Legislative Intervenors lack "adequate representation" because they cannot appear at oral argument, surely the Chamber would provide that representation. After all, the Legislative Intervenors and the Chamber have filed a joint motion suggesting their intent to adopt exactly the same arguments. While this Court need not grant intervention at all, any grant of intervention should thus be restricted to the Chamber.

### 3. The Legislative Intervenors should not be granted permissive intervention.

Because oral argument is imminent and the Legislative Intervenors cannot establish their entitlement to intervention as of right, this Court should decline to exercise its discretion to grant permissive intervention. On these facts, the Legislative Intervenors present no "imperative reasons" for intervention. *Bates*, 127 F.3d at 873 (cleaned up).

"An applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the

main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Cooper*, 13 F.4th at 868. Meeting these threshold requirements of course only qualifies a proposed intervenor for permissive intervention; it does not entitle them to it.

For reasons similar to those dictating that intervention as of right is not warranted here, permissive intervention similarly should be denied. *See, e.g.*, *Cooper*, 13 F.4th at 868 (affirming denial of permissive intervention in part because proposed intervenors "were not authorized" under state law to defend the state in the litigation); *Kaul*, 942 F.3d at 804 (affirming denial of permissive intervention in part because "the value the Legislature added to the Attorney General's representation of the State was outweighed by the practical complications that could have resulted from the State's having two representatives at the same time"); *id.* (suggesting possibility of allowing the Legislature "only to file amicus briefs and oppose any consent decrees"); *accord Diamond*, 476 U.S. at 76-77 (O'Connor, J., concurring) (finding permissive intervention unwarranted where proposed intervenor lacked the sort of interest that would support a legal claim or defense).

And although the Legislature need not prove inadequacy of representation to intervene permissively, some courts have held that "'the case for permissive intervention disappears' when a proposed intervenor fails 'to overcome the presumption of adequate representation by the government.'" *Kaul*, 942 F.3d at 803

(quoting *One Wis. Inst., Inc. v. Nichol*, 310 F.R.D. 394, 399 (W.D. Wis. 2015); *Menominee Indian Tribe of Wis. v. Thompson*, 164 F.R.D. 672, 678 (W.D. Wis. 1996)). Here, the State is already represented by the Attorney General, and through her seeks an injunction that, while narrower than the district court's, would still protect state interests by applying to state entities and avoiding any conflict with state law. Under these circumstances, permissive intervention the week before oral argument is not warranted.

Finally, again, intervention is not all or nothing: permitting intervention of one movant does not require permitting it for others. In arguing for permissive intervention, the Proposed Intervenors say they "wish only to ensure that the positions that the Attorney General wholly or partially abdicated in her February 14 letter are preserved and maintained in future proceedings before this Court and the United States Supreme Court." (Dkt. 53 at 20.) Given the Proposed Intervenors' apparent intent to present identical arguments, allowing intervention by just one of them would be sufficient.

## III. One or more Proposed Intervenors could simply appear as amici.

Finally, it is worth noting the unique nature of the relief Proposed Intervenors' seek. They do not seek to raise new claims, new defenses, or new arguments. They do not seek to file a brief or respond to any brief. Instead, they simply wish to participate in oral argument to make arguments already made by the Attorney

17

General's predecessor. Intervention is not necessary to grant that request. Any "emergency" need to present those arguments on March 7 can be resolved by allowing one or more Proposed Intervenors to appear as amicus. Indeed, the State would not object to yielding some of its oral argument time to that end.

Although Proposed Intervenors seek to intervene in part because they may ultimately wish to petition for rehearing in this Court or seek certiorari in the United States Supreme Court, even they acknowledge that may not ultimately be "necessary." (Dkt. 53 at 5.) Their purpose is speculative and assumes an outcome of the case; these are hardly "imperative reasons." *Bates*, 127 F.3d at 873 (cleaned up).[6]

Thus, to the extent this Court is inclined to grant any Proposed Intervenor the ability to participate in oral argument, it might consider doing so by permitting appearance as amicus, rather than intervention.[7] *Cf. Miracle*, 333 F.R.D. at 156-57

---

[6]   There is one reason the distinction between party and amicus status might affect the Chamber's rights, as whether the Chamber is a party may affect the appropriate scope of the injunction. *See, e.g.*, *Kentucky*, 57 F.4th at 557 (narrowing injunction against Contractor Mandate to cover only the parties). Whether the Legislative Intervenors can join the Attorney General in representing state interests presents no such concern.

[7]   To that end, this Court could construe Proposed Intervenors' motion to intervene as including (1) a proposed amicus letter joining the previous Attorney General's answering brief, and (2) an amicus request to share oral argument time with the Attorney General. *See* 9th Cir. R. 29-1, Circuit Advisory Committee's Note ("Amici who wish to join in the arguments . . . of a party or other amici are encouraged to file and serve on all parties a short letter so stating in lieu of a brief.");

(denying motion for intervention, but permitting President of Arizona Senate and Speaker of Arizona House to participate as amicus).

## CONCLUSION

For the reasons above, the State takes no position on the Chamber's motion to intervene. Regardless of the outcome for the Chamber, however, the Legislative Intervenors' motion should be denied.

Respectfully submitted this 24th day of February, 2023.

Kristin K. Mayes
*Attorney General*

 */s/ Alexander W. Samuels*
Alexander W. Samuels
*Principal Deputy Solicitor General*
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-5252
Alexander.Samuels@azag.gov
*Counsel for Appellees State of*
*Arizona and Kristin K. Mayes*

---

Fed. R. App. P. 29(a)(8) (permitting amici to participate in oral argument with the Court's permission).

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I presented the above and foregoing for filing and uploading to the CM/ECF system which will send electronic notification of such filing to all counsel of record.

Dated this 24th day of February, 2023.

*/s/ Alexander W. Samuels*