*No. 22-15518*

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MARK BRNOVICH, *et al.*,

        *Plaintiffs-Appellees,*

vs.

JOSEPH R. BIDEN, *et al.*,

        *Defendants-Appellants.*

On Appeal from the United States District Court for the District of Arizona
Hon. Michael T. Liburdi
Case No. 2:21-cv-01568-MTL

REPLY IN SUPPORT OF MOTION TO INTERVENE BY THE FIFTY-SIXTH ARIZONA LEGISLATURE, SPEAKER OF THE ARIZONA HOUSE OF REPRESENTATIVES BENJAMIN TOMA, ARIZONA SENATE PRESIDENT WARREN PETERSEN, AND ARIZONA CHAMBER OF COMMERCE & INDUSTRY

Kory Langhofer – AZ Bar # 024722
Thomas Basile – AZ Bar # 031150
STATECRAFT PLLC
649 North Fourth Avenue, First Floor
Phoenix, Arizona 85003
Telephone: 602.382.4078
*Attorneys for Proposed Legislative Intervenors*

Michael Bailey – AZ Bar # 013747
(admission application forthcoming)
ARIZONA CHAMBER OF COMMERCE & INDUSTRY
100 N. 7th Avenue, Suite 120
Phoenix, Arizona 85007
Telephone: 602.248.4430
*Attorney for Arizona Chamber of Commerce & Industry*

**INTRODUCTION**

The Attorney General opens her Response with a swipe at a strawman, proclaiming that "[a]ny suggestion" that her changes of position "were taken in bad faith is baseless." Dkt. 60 at 4. The Proposed Intervenors never alleged—and do not believe—that the Attorney General has acted in "bad faith." The Attorney General possesses lawful (albeit qualified) discretion to calibrate positions the State espouses in litigation. But when, as here, she deploys that authority in a manner that abdicates or compromises vital sovereign interests, other state officers are entitled to infuse the proceedings with the full measure of adversity. *Cf. Conservation Law Found. of New England v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (governmental party's concession to opposing party was "not necessarily an improper action, but it does leave [proposed intervenors] with the distinct feeling that the Secretary is less than wholeheartedly dedicated to opposing the [adverse party's] aims").

The Attorney General's preoccupation with establishing the proficiency of her appellate strategy evinces a misguided attachment to outmoded rubrics of discerning legislative "interests" necessary to sustain intervention and the adequacy of their representation. In a pair of landmark rulings last year, the Supreme Court instructed that a state official's intervention as of right is not conditioned upon a named party's wholesale capitulation or objective incompetence. Rather, when a claim bears a

direct nexus to a state's sovereign interests, it is enough that there is some divergence between a named party and an intervenor that state law recognizes as a guardian of that sovereignty. *See Cameron v. EMW Women's Surgical Ctr.*, 142 S. Ct. 1002 (2022); *Berger v. N.C. State Conference of the NAACP*, 142 S. Ct. 2191 (2022).

Because these circumstances now exist, and because intervention would not inflict any articulable prejudice on any named party, the Court should allow the Legislature and the Chamber to intervene as of right or on a permissive basis.

## ARGUMENT

### I. Standard of Review

The Attorney General and the Appellants, citing *Bates v. Jones*, 127 F.3d 870 (9th Cir. 1997), insist that the Proposed Intervenors must supply "imperative reasons" for intervention. Dkt. 60 at 4; Dkt. 59 at 3. The continued vitality of that proposition, however, is doubtful. The Supreme Court has directed that intervention on appeal should be undergirded by "'the policies underlying intervention' in the district courts." *Cameron*, 142 S. Ct. at 1010. It neither announced nor implied that these "policies" are imbued with a heightened rigor or necessitate stricter application on appeal. To be sure, appellate intervention may in some circumstances magnify concerns of timeliness or prejudice to the parties. But neither the Attorney General nor the Appellants argued that this Motion is untimely, or delineated any specific harm or inequity that would ensue from intervention. In any event, the Proposed

2

Intervenors have made the necessary showing under either the *Bates* or the *Cameron* standard.

## II. The Court Can Defer Potential Questions of State Law By Granting Permissive Intervention to Both the Legislature and the Chamber

The most efficient disposition of the Motion would afford both the Legislature and the Chamber permissive intervention. No party opposes the Chamber's intervention, *see* Dkt. 59 at 4, Dkt. 60 at 5; the Appellants' neutrality extends to the Legislature as well, *see* Dkt. 59 at 3. Further, given that the dispute between the Legislature and the Attorney General concerning intervention as of right is enmeshed with the question of whom Arizona law empowers to defend which State interests, Rule 24(b) offers a more expeditious and linear path to a resolution. *See Planned Parenthood v. Kaul*, 942 F.3d 793, 803 (7th Cir. 2019) (permissive intervention standard enables the court "to consider a wide variety of factors, including the needs of federal-state comity").

The Attorney General proffers two reasons to thwart the Legislature's permissive intervention; neither persuades. First, the Attorney General reiterates that she already adequately represents the Legislature's asserted interests. *See* Dkt. 60 at 16. Although this contention is addressed in more detail below, it will suffice here to query why—if the Attorney General is, in fact, truly championing the Legislature's interests—she would so strenuously combat the participation of parties who would only reinforce her ostensible objectives. *See Kane Cty. v. United States*,

3

928 F.3d 877, 895 (10th Cir. 2019) (named party's opposition to intervention was itself indicative of inadequate representation).

Next, the Attorney General suggests that the Chamber's intervention obviates the need for legislative intervention. *See* Dkt. 60 at 17. But there are three flaws in this reasoning. First, by virtue of their intrinsically different attributes and responsibilities, governmental parties and private persons will rarely share a complete congruence of interests. *See Berg*, 268 F.3d at 823. Second, given the distinct (albeit complementary) interests advanced by each of the Legislature and the Chamber, intervention by both enhances the likelihood that at least one can seek review of any adverse decision on the merits. Third, a corollary of the Legislature and the Chamber's general alignment is that dual intervention exacts no prejudice; neither intervenor seeks additional briefing, a postponement of oral arguments, or the insertion of new claims or issues. *See Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998) (discretionary component of Rule 24(b) must consider "whether intervention will unduly delay the main action or will unfairly prejudice the existing parties"); *Buck v. Gordon*, 959 F.3d 219, 225 (6th Cir. 2020) ("[B]y analyzing the identity of interests, and *not* the risk of undue delay or prejudice to the existing parties, which plainly favored the [proposed intervenors], the district court applied the wrong standard" to permissive intervention request).

Because their participation would not delay the proceedings or prejudice a named party, the Court should allow both the Legislature and the Chamber to intervene permissively.

### III. Arizona Law Confers on the Legislature Protectable Interests in Defending State Sovereignty and Preventing Unlawful Federal Impairments of State Law

When a State "empowers multiple officials to defend its sovereign interests in federal court," *Cameron*, 142 S. Ct. 1011, such officials possess the protectable interest requisite to intervention as of right. In other words, the "protectable interest" prong of Rule 24(a)(2) is satisfied in the context of legislative intervention if (1) the action implicates a cognizable state "interest" and (2) state law vests in the legislative body or officer some authority to defend or safeguard that interest.

The first criterion—*i.e.*, the existence of a valid state interest—should be uncontroverted. As explained in the Motion (Dkt. 53 at 8–9), the interests asserted by the Legislature largely are the same ones that the Attorney General herself invoked to sustain standing. The State as a federal contractor has an interest in resisting unlawful federal mandates, particularly given that their enforcement would collide with state laws protecting public employees from vaccine mandates. *See Brnovich v. Biden*, 562 F. Supp. 3d 123, 146 (D. Ariz. 2022); Ariz. Rev. Stat. § 36-685. Additionally, the State maintains a transcendent and "legally protected sovereign interest in the exercise of sovereign power over individuals and entities

5

within its jurisdiction, which involves the power to create and enforce a legal code." *Brnovich*, 562 F. Supp. 3d at 146 (cleaned up).

Thus, the fulcrum of the dispute is whether Arizona law confers on the Legislature or its presiding officers some ability or prerogative to judicially vindicate these interests. At least two separate provisions affirm that it does. *See Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1088–89 & n.12 (9th Cir. 2022) (interest must be "protectable under some law," which may include state law).

First, article II, section 3 of the Arizona Constitution secures to the elected branches of state government—to include elected "representatives"—authority to resist with "any . . . available legal remedy" allegedly unconstitutional federal incursions into the State's domain. The provision's recent vintage and the related dearth of interpretive guidance do not detract from the breadth of its text. Indeed, although not expressly cited in the complaint, the Attorney General at least implicitly exercised authority conferred by section 3(B)(3) in obtaining an injunction against enforcement of the Contractor Mandate. As a result, "this state and all political subdivisions of this state are prohibited from using any personnel or financial resources to enforce, administer or cooperate with the [Contractor Mandate]." *Id.* § 3(C). The Attorney General's disavowal of much of that injunction, compounded with her retreat from key arguments in defense of what would remain of it, have left

6

the Legislature as the sole organ of state government willing and able to effectuate fully the commands of article II, section 3 through this litigation.

The Attorney General musters an anemic rejoinder that the district court premised its injunction solely on statutory grounds. *See* Dkt. 60 at 9. But this sleight of hand confounds the rationale of the district court's ruling with the full scope of the extant controversy. *Cf. Berg*, 268 F.3d at 823 ("[T]he focus should be on the 'subject of the action,' not just the particular issues before the court at the time of the motion"). Notably, one of the arguments from which the Attorney General has walked away posits that any construction of the relevant federal statutes that sustains the Contractor Mandate would present serious constitutional questions. *See* Dkt. 52 at 2. In short, there is certainly "a relationship between," *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011), this dispute—which pivots fundamentally on the equilibrium of federal authority relative to State police power—and the sovereign interests that article II, section 3 licenses the Legislature to judicially vindicate.

Second, Ariz. Rev. Stat. § 12-1841 empowers the Legislature's presiding officers to "intervene" or otherwise "be heard" in any proceeding contesting the validity of a state statute. A victory by the Appellants would effectively abrogate Ariz. Rev. Stat. § 36-685 and other enactments that protect public employees from vaccine mandates. The Attorney General's assurance that she still supports (for

7

now) a "narrowed injunction," Dkt. 60 at 12, relates merely to the putative adequacy of her representation; it does not negate the Legislature's antecedent interest in preserving the full efficacy of this statute. Further, the puzzling notion that the Legislature lacks a protectable interest because Ariz. Rev. Stat. § 36-685 was enacted after this litigation commenced, *see id.*, is a novel excogitation of the Attorney General; this odd temporal distinction finds no basis in the case law.

More fundamentally, the Attorney General confuses the procedural attributes attending *Berger* with its actual holding. Consistent with "the practical and equitable considerations," *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004), that animate Rule 24, *Berger* encapsulates a broader cognizance of "the possibility that different branches of government may seek to vindicate different and valuable state interests," 142 S. Ct. at 2205, irrespective of whether those interests assume an offensive or defensive posture in any given proceeding.

Thus, Arizona law authorizes the Legislature and its presiding officers to defend the State's sovereign interests in litigation. Should the Court find the relevant authorities indeterminate, however, it should certify the question to the Arizona Supreme Court, pursuant to Arizona Supreme Court Rule 27. *Quihuis v. State Farm Mut. Auto. Ins.*, 748 F.3d 911, 914 (9th Cir. 2014) (certification appropriate when "Arizona cases are unclear on the answer to the specific question at issue here").

8

### IV. The Attorney General Does Not Adequately Represent the Legislature's Interests

Perhaps recognizing it as the only means of salvaging her already moribund argument that she adequately represents the Legislature's interests, the Attorney General strains to resuscitate a "presumption" of adequacy, carefully cropping a quotation from *Berger* to contend that the presumption is eliminated only when legislative intervenors wish to "defend a state law." Dkt. 60 at 14. A contextual review of the passage, however, rebuts that reading. The court clarified that any such presumption is "*especially* inappropriate when wielded to displace a State's prerogative to select which agents may defend its laws ***and protect its interests***." 142 S. Ct. at 2204–05 [second emphasis added]. Importantly, the court signaled that the **only** scenario in which such a presumption might remain viable is when "a private litigant seeks to defend a law alongside the government or in any other circumstance." *Id.* at 2204. And even then, the "presumption applies only when interests 'overlap fully,'" *id.*—a contingency that even the Attorney General seemingly does not posit here. By contrast, a mere "similar[ity]" of interests "normally is not enough to trigger a presumption of adequate representation." *Id.*

And even if such a presumption could be properly interposed, the Attorney General's (1) affirmative repudiation of much of the injunctive relief secured in the district court, (2) forfeiture of a right to seek a remand on certain unresolved claims, (3) refusal to pursue substantive and potentially dispositive arguments on important

9

disputed issues of law, and (4) apparent unwillingness to commit to seeking further review of any adverse panel ruling on the merits—individually and collectively—establish decisively an inadequacy of representation. *See Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) (intervenors' advocacy for broader remedy "represents more than a mere difference in litigation strategy"); *W. Watersheds Project v. Haaland*, 22 F.4th 828, 841 (9th Cir. 2022) (intervenor's willingness to make three arguments not advanced by party demonstrated inadequate representation); 25 FED. PROC., L. ED. § 59:391 ("[A] failure to appeal may be one factor in deciding whether representation by existing parties is inadequate").

Indeed, the Attorney General's adamant resistance to the Legislature's participation is itself an implicit concession that "legislative leaders seek to give voice to a different perspective," *Berger*, 142 S. Ct. at 2205, and underscores "how divided state governments sometimes warrant participation by multiple state officials in federal court," *id.*

## CONCLUSION

For the reasons stated herein and in the Motion, the Court should allow the Chamber and the Legislature to intervene permissively or, alternatively, as of right.

Dated: February 27, 2023        STATECRAFT PLLC

By: */s/ Thomas Basile*
    Kory Langhofer
    kory@statecraftlaw.com
    Thomas Basile
    tom@statecraftlaw.com
    649 North Fourth Avenue
    First Floor
    Phoenix, Arizona 85003

*Attorneys for Proposed Intervenors Fifty-Sixth Arizona Legislature, Arizona Speaker of the House of Representatives Benjamin Toma, and Arizona Senate President Warren Petersen*

Michael Bailey
(admission application forthcoming)
mbailey@azchamber.com
ARIZONA CHAMBER OF COMMERCE & INDUSTRY
100 N. 7th Avenue, Suite 120
Phoenix, Arizona 85007

*Attorney for Proposed Intervenor Arizona Chamber of Commerce & Industry*

## CERTIFICATE OF COMPLIANCE

This Motion complies with the type-volume limitation of Rule 27(d)(2) because it contains 2,318 words, excluding the parts that can be excluded. Pursuant to Circuit Rule 27-1(d), the Motion does not exceed 10 pages. This Motion further complies with the typeface requirements of Rules 27(d)(1)(E) and 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using the Microsoft Word in 14-point Times New Roman font.

Dated: February 27, 2023    */s/ Thomas Basile*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on February 27, 2023. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: February 27, 2023    */s/ Thomas Basile*